```
                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF LOUISIANA
                         ALEXANDRIA DIVISION


JACQUELINE HAMILTON              CIVIL ACTION NO. 08-1717

VERSUS
                                 DISTRICT JUDGE DEE D. DRELL
STANDARD INSURANCE
     COMPANY                     U.S. MAGISTRATE JUDGE JAMES D. KIRK
```

### REPORT AND RECOMMENDATION

This Employees Retirement Income Security Act ("ERISA") case, 29 U.S.C.1001 et seq., is referred to me by the district judge for Report and Recommendation. The case is ready for decision on briefs on the merits in accordance with the ERISA Case Order [Doc. #16].

### Facts

Claimant, Jacqueline Hamilton, age 44, worked at CenturyTel in Alexandria as a plant support technician from 1994 until the company was shut down in March , 2006. She had had to take leave under the Family Medical Leave Act (FMLA) from time to time since February 2002. Plaintiff complained of fibromyalgia, Lyme disease and multiple sclerosis (MS).

After being informed the company's Alexandria location would close, plaintiff filed this claim for disability benefits on February 27, 2006. The claim was denied in October 2006 after it

was reviewed by board certified physician consultants in neurology and in rheumatology, respectively. The company found that there was no documentation of a specific diagnosis and she could continue her own occupation.

In April 2008 claimant filed an untimely appeal of the decision on her long term disability application. Nevertheless, the company agreed to review it once again, including new medical information Hamilton submitted. The company had the original two consulting physicians review the new information to see if it changed their opinions. It did not. Then the company had two new consulting physicians review the file and they too determined that the medical evidence did not support disability. The original decision was confirmed on September 11, 2008, again finding that the medical information submitted did not document limitations and restrictions that would prevent claimant from working in her own occupation.

Plaintiff filed this appeal on November 16, 2008.

## **Standard of Review**

In accordance with this court's standing ERISA Case Order, the parties agree that the Group Long Term Disability Plan issued by defendant is an employee welfare benefit plan, as defined by the provisions of ERISA, and that this case is governed by ERISA and that all state law claims are preempted. The parties also agree that the Plan provides the administrator with discretionary

2

authority to interpret the provisions of the Plan and to make findings of fact and determine eligibility for benefits. Both Claimant and Defendant agree that the administrative record is complete. However, because the administrator is both insurer and administrator and is thus conflicted, the court will give a modicum less deference to the administrator's decision. <u>Vega v. National Life Insurance Services, Inc.</u>, 188 F.3d 287, 299 (5th Cir. 1999).

### **The Plan**

The disability plan provides that an employee is disabled, for the first eighteen months, if she is unable to perform the material duties of her own occupation. Thereafter, she must be unable to perform the material duties of any occupation.

### **The Medical Records**

In 2002 plaintiff saw a neurologist, Dr. Hajmarad, who did extensive testing, including a brain MRI, EEG, NCS which were all normal. The doctor related plaintiff's complaints to stress, depression and lack of sleep, but noted there was a 20% chance she had MS, although a transesophageal echocardiogram came back negative. Hamilton continued occasional absences from work during that year. Hajmarad referred plaintiff for evaluation of depression and fibromyalgia to two specific physicians. No records of those doctors are in the record and it is thought that perhaps she never saw them. Plaintiff continued with her absences from work for three

years until CenturyTel closed in March 2006. In June 2003 claimant saw Dr. Qureshi at LSU who diagnosed depression and anxiety.

In early 2006 she once again sought treatment with Dr. Hajmarad, the neurologist, for headaches, numbness, pain, dizziness and feeling tired and weak. He ordered a repeat MRI of the brain and blood work. He again suggested the possibility of MS, this time at 50% possibility. However, Dr. Hajmarad completed family medical leave paperwork at that time that her condition was not disabling. Plaintiff stopped work in March 2006. She then changed family doctors from Dr. Joiner to Dr. Forester. Joiner had attributed plaintiff's complaints to stress and anxiety.

Without doing any testing, Dr. Forester diagnosed fibromyalgia and Lyme disease. In April Forester found plaintiff could not work at all. She continued complaints with Dr. Forester in 2006.

In 2007, plaintiff was seen by Dr. Bryant, who diagnosed MS, fibromyalgia, carpal tunnel syndrome and slow mentation. She also found that claimant had limitations of functional capacity, and of range of motion with decreased strength. In December 2007, Dr. Forester's impression was Lyme disease, and fibromyalgia and some cognitive dysfunction.

In February 2008, Forester's diagnosis was little changed and he noted symptoms of MS. A repeat brain MRI was done with no noted change.

4

**<u>Review for Abuse of Discretion</u>**

Hamilton does not contest the administrator's interpretation of the Plan. See <u>Wildbur v. ARCO Chem. Co.</u>, 974 F.2d 631 (5th Cir. 1992). Rather, claimant, through counsel, argues that there does not exist in the record substantial evidence to support the decision of the administrator and that the company placed too much emphasis on the opinions of its own consulting physicians as opposed to plaintiff's treating doctors.

Eligibility for benefits under any ERISA plan is governed by the plain meaning of the plan language. <u>Threadgill v. Prudential Securities Group, Inc</u>., 145 F.3d 286 (5th Cir. 1998). In determining whether an administrator abused its discretion, we look to whether that administrator was arbitrary or capricious. "An administrator's decision to deny benefits must be 'based on evidence, even if disputable, that clearly supports the basis for its denial." <u>Lain v. UNUM Life Ins. Co. of America</u>, 279 F.3d 337, 342 (5th Cir. 2002). There must be "concrete evidence" in the administrative record that supports the denial of the claim. <u>Id</u>. The administrator's decision should be reversed only if it is arbitrary or capricious, that is, if the record lacks substantial evidence to support the Plan Administrator's benefit determination. See <u>Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.</u>, 168 F.3d

211, 215 (5th Cir. 1999).  See also Vega v. Nat'l Life Ins. Servs., 188 F.3d 287, 299 (5th Cir. 1999).

The initial denial and the denial of reconsideration on appeal were all expressly based on the lack of objective medical evidence to support a finding of disability. Such a basis for a disability determination may constitute "substantial evidence" or "concrete evidence". See Mouton v. Fresenius Medical Care of North, 2003 WL 22287522 (5th Cir. 2003), Dubose v. Prudential, 2003 WL 23021934 (5th Cir. 2003)(unpublished), Chandler v. Hartford, 2006 WL 1209363 (5th Cir. 2006)(unpublished), Ruiz v. Continental Casualty Co., 400 F.3d 986 (7th Cir. 2005), Johnson v. Metropolitan, 437 F.3d 809 (8th Cir. 2006), Wangenstein v. Equifax, Inc., 2006 WL 2220822 (11th Cir. 2006)(unpublished). That determination--that there was simply no objective medical evidence supporting Hamilton's claim--is correct and supported a finding of no disability.

In addition, however, are the opinions of the four consulting physicians, two in neurology and two in rheumatology. Dr. Dickerman, a neurologist, evaluated the medical records in September 2006. He noted a history of multiple complaints and multiple workups. He noted the brain white matter changes seen on MRI were nonspecific and not the type usually seen with MS. He found that all of the studies and tests had been, in his opinion, normal. In summary, Dr. Dickerman concluded that plaintiff does not have MS or any neurological disorder to explain her symptoms and he

6

noted that she was found not to have fibromyalgia or Lyme disease. While Dickerman felt that plaintiff might have a psychological disorder, he noted it was not an impairment.

Dr. Ingram, a rheumatologist, reviewed the records in 2006 also. She found that the records did not support a diagnosis of fibromyalgia and that there had never been a comprehensive musculoskeletal exam or other findings necessary for a finding of fibromyalgia.[1] She also noted that the evidence did not support a finding of Lyme disease since the test for that, the Western Blots test, was negative and there was no clinical history of a tick bite. She concluded that plaintiff had no limitations that would prevent her from working.

In 2008, in connection with the company's review of all of the evidence, Dr. Dickerman and Dr. Ingram were asked to update their opinions based on the limited new medical evidence. Dr. Dickerman, in July 2008, opined that plaintiff's diagnoses have never been

---

[1] Fibromyalgia is an increasingly recognized chronic pain illness which is characterized by widespread musculoskeletal aches, pain and stiffness, soft tissue tenderness, general fatigue and sleep disturbances.  The most common sites of pain include the neck, back, shoulders, pelvic girdle and hands, but any body part can be involved.  Fibromyalgia patients experience a range of symptoms of varying intensities that wax and wane over time.  To diagnose fibromyalgia, doctors must rely on patient histories, self-reported symptoms, a physical examination and an accurate manual tender point examination.  It may take five years to obtain an accurate diagnosis which is made based on standardized criteria. The diagnosis requires a finding of widespread pain in all four quadrants of the body for a minimum duration of three months and tenderness in at least 11 of 18 trigger points.   MedlinePlus.com, a service of the U.S. National Library of Medicine and the National Institute of Health.

The Fifth Circuit has described fibromyalgia as "an elusive but debilitating affliction" that "is characterized by complaints of generalized pain, poor sleep, an inability to concentrate, and chronic fatigue." Black v. Food Lion, Inc. 171 F.3d 308, 309 (5th C. 1999).  Other courts have recognized the disease as well.  See for example, Jusino v. Barnhard, 2002 WL 31371988 (E.D. Pa.).

proven and that there are no findings in the case to change his original opinion.

Dr. Ingram also found that the new information did not change her opinion that there is no support for the diagnosis of fibromyalgia. She too noted that there has not been a comprehensive musculoskeletal exam in order to make the diagnosis.

In addition to asking those two doctors to update their opinions, in connection with the review, the company asked two new physicians to review the records. Dr. Zivin, a neurologist, reviewed the records in September 2008. He found that MS had never been properly diagnosed nor was it supported by the medical records. In addition, he found no evidence of cognitive impairment nor evidence of carpal tunnel syndrome, which had been mentioned in the records. Zivin found no neurological diagnosis for plaintiff and he found she was capable of continuing her job.

Dr Fraback, a rheumatologist, reviewed the records in August of 2008. He found that plaintiff does not have fibromyalgia and does not have any musculoskeletal disease which prevents her from working. He also concluded that she does not have Lyme disease nor evidence of any cognitive impairments.

Plaintiff argues, however, that Standard should not have relied on the opinions of its consultants when plaintiff's own doctors' opinions were contrary. First, plaintiff's own doctors' opinions do not support disability. For example, Dr. Hajmarad

8

opined in March of 2006, when he completed the FMLA paperwork, that plaintiff could work. Dr. Forester's diagnoses are not supported by the evidence, including the opinion of Dr. Hajmarad and medical tests, even without considering the opinions of the experts. Second, the administrator is not required to give special deference to the treating physicians when confronted with contrary reliable evidence, see Black & Decker Disability Plan v. Nord, 123 S.Ct. 1965 (2003); Love v. Dell, Inc., 551 F.3d 333 (5th C. 2008). Stated another way, ERISA does not require the opinions of treating physicians to be preferred over those of other physicians reviewing a file; ERISA merely requires that the opinions of treating physicians, as with all evidence submitted by the claimant, actually be taken into account in an administrator's determination. Love v. Dell, Inc., supra.

Finally, plaintiff argues that the fact that she was later awarded Social Security disability benefits shows that Standard's determination is erroneous. However, Standard is not required to defer to a Social Security ruling. See Horton v. Prudential Ins. Co., 51 Fed.Appx. 928 (5th Cir.2002) ("[W]hile an ERISA plan administrator might find a social security disability determination relevant or persuasive, the plan administrator is not bound by the social security determination." (citation omitted)). Williams v. Hartford Life Ins. Co., 243 Fed. Appx. 795 (5th C. 2007).

9

**Conclusion**

The medical evidence in the case shows that plaintiff has multiple subjective complaints. However, the evidence does not support a diagnosis of MS, fibromyalgia, Lyme disease, or any other disorder which would prevent plaintiff from working. In addition, the reviews by the four consultants support the fact that the medical evidence does not support any diagnosis which would prevent plaintiff from working.

For the foregoing reasons, the Court finds, after reviewing the record and considering defendant's dual role as insurer and plan administrator, that the decision of the administrator is supported by substantial and concrete evidence and is neither arbitrary nor capricious nor an abuse of discretion.

IT IS RECOMMENDED that plaintiff's appeal be DENIED and the case dismissed.

**OBJECTIONS**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the district judge at the time of filing. Timely objections will be

considered by the district judge before he makes his final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UN-OBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, in Alexandria, Louisiana, on this 25th day of January, 2010.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE